**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| DINAR CORP. INC., a Nevada Corporation and HUSAM TAYEH, an individual, | Case No. 2:13-cv-02106-APG-PAL |
| Plaintiffs, | **ORDER TRANSFERRING CASE** |
| v. | |
| STERLING CURRENCY GROUP, LLC, dba DINAR BANKER; TYSON RHAME and JANE DOE RHAME, husband and wife; FRANK BELL and JANE DOE BELL, husband and wife; JORDAN DOE and JANE DOE, husband and wife; MATTHEW ADAMS and JANE DOE ADAMS, husband and wife; MARK DILEO and JANE DOE DILEO, husband and wife; DOE DEFENDANTS I-X INCLUSIVE; and ROE DEFENDANTS I-X, INCLUSIVE, | |
| Defendants. | |

Defendants Sterling Currency Group, LLC, Tyson Rhame, Frank Bell, Tracy Bell, and Matthew Adams have moved to dismiss this case for lack of personal jurisdiction. (Dkt. #4.) The motion is appropriate for disposition without oral argument under Local Rule 78-2. Because the defendants have not purposefully availed themselves of the privileges and benefits of Nevada law, dismissal would be appropriate. However, under the circumstances of this case, the more appropriate relief is to transfer this case to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a).

I.      **BACKGROUND**

Plaintiff Dinar Corp. Inc. ("Dinar Corp") and defendant Sterling Currency Group, LLC ("Sterling") are competitors in the online currency exchange industry. Plaintiffs Dinar Corp and Husam Tayeh (Dinar Corp's president and sole shareholder) allege that Sterling, together with its

1   employees Tyson Rhame, Frank Bell, Jordan Doe, and Matthew Adams,[1] led an online "smear

2   campaign" against Dinar Corp.  Specifically, they allege the Defendants posed as customers and

3   posted poor reviews and disparaging comments about Dinar Corp to a website called

4   "dinarreview.com," a site purporting to be a neutral platform where customers of online currency

5   exchange companies can post reviews, comment about their experiences, and research

6   companies' reputations.  Plaintiffs further allege that Sterling's employees sent emails with false

7   and disparaging information to two of Dinar Corp's advertisers and a prospective client.

8         Plaintiffs' lawsuit alleges defamation, business disparagement, false advertising and unfair

9   competition under the Lanham Act, false light invasion of privacy, tortious interference with

10   current and prospective business relationships, aiding and abetting, and conspiracy. (Dkt. #5.)[2]

11   Defendants argue that they lack sufficient contacts with Nevada to justify the exercise of

12   jurisdiction over them.  Because Defendants have not purposefully availed themselves of the

13   privileges and benefits of Nevada law, this Court lacks personal jurisdiction over them.  However,

14   rather than dismissing the lawsuit, the interest of justice favors transfer of the case to the Northern

15   District of Georgia pursuant to 28 U.S.C. § 1406(a).

16   **II.     DISCUSSION**

17       **A. Legal Standard**

18         A district court may exercise personal jurisdiction over a defendant only if (1) the

19   jurisdiction is provided for by law, and (2) the exercise of jurisdiction comports with the

20   constitutional guarantees of due process. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207

21   (9th Cir. 1980).  "Federal courts ordinarily follow state law in determining the bounds of their

22   jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Fed. R.

23   Civ. P. 4(k)(1)(A)).  Under Nevada's long-arm statute, a Nevada court "may exercise jurisdiction

24   over a party to a civil action on any basis not inconsistent with the constitution of [Nevada] or the

25

26   [1] Plaintiffs also named the employees' spouses as parties.  I previously dismissed the action against Jane Doe, Jordan Doe, Jane Doe Adams, and Jane Doe Deniz pursuant to Fed. R. Civ. P. 4(m). (Doc. # 43). As the Complaint does not contain any specific allegations against Jane Doe

27   Rhame, I dismiss the claims against her pursuant to Fed. R. Civ. P. 12(b)(6).

28   [2] Plaintiffs later stipulated to the dismissal of all claims against Tamer Deniz.

1    Constitution of the United States." NRS § 14.065(1).  Thus, "Nevada's long-arm statute . . .

2    reaches the limits of due process set by the United States Constitution." *Baker v. Eighth Judicial*

3    *Dist. Ct.*, 999 P.2d 1020, 1023 (Nev. 2000).

4              The constitutional touchstone for determining whether an exercise of personal jurisdiction

5    comports with due process "remains whether the defendant purposefully established 'minimum

6    contacts' in the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)

7    (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), such that "the maintenance of

8    the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326

9    U.S. at 316 (internal quotation omitted).  Two categories of contacts can satisfy the requirements

10   of due process.  First, a court may exercise general jurisdiction over a defendant where the

11   defendant's contacts with the forum are so "'continuous and systematic' as to render [him]

12   essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.

13   Ct. 2846, 2851 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316). *See also Tuazon v. R.J. Reynolds*

14   *Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia,*

15   *S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  Second, "if the defendant has 'purposefully directed' his

16   activities at residents of the forum, and the litigation results from the alleged injuries that 'arise

17   out of or relate to' those activities" the court may exercise specific jurisdiction over the

18   defendant. *Burger King*, 471 U.S. at 472 (citations omitted).  Under either category, "the

19   defendant's conduct and connection with the forum State must be such that he should reasonably

20   anticipate being haled into court there." *Id.* at 477–78.  The "essential" inquiry is whether "the

21   defendant purposefully avails itself of the privilege of conducting activities within the forum

22   State, thus invoking the benefits and privileges of its laws." *Id.* at 475.

23             Once "minimum contacts" have been established, the court considers those contacts "in

24   light of other factors to determine whether the assertion of personal jurisdiction would comport

25   with fair play and substantial justice." *Id.* at 476.  These factors are: (1) the burden on the

26   defendant to litigate in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the

27   plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's

28   interest in obtaining the most efficient resolution of controversies, and (5) the shared interest in

1  the states in furthering fundamental substantive social policies. *Id.* at 477 (citing *World-Wide*

2  *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  Additionally, a defendant who has

3  purposefully directed his activities at a forum may defeat jurisdiction by presenting a "compelling

4  case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

5  However, compelling cases "are limited to the rare situation in which the plaintiff's interest and

6  the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly

7  outweighed by the burden of subjecting the defendant to litigation within the forum." *Patent*

8  *Rights Prot. Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010)

9  (citation omitted).

10       Finally, where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

11  bears the burden of demonstrating that the court's exercise of jurisdiction over the defendant

12  would be appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where the motion is

13  based on written materials, "the plaintiff need only make a prima facie showing of jurisdictional

14  facts." *Id.*  In doing so, however, the plaintiff may not "simply rest on the bare allegations of [his]

15  complaint." *Amba Mktg Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  But any

16  uncontroverted allegations in the complaint must be taken as true and any conflicts between

17  statements contained in affidavits must be resolved in the plaintiff's favor. *AT&T v. Compagnie*

18  *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

19       **B. Analysis**

20       Defendants do not challenge any of the jurisdictional allegations in the Complaint, but

21  rather assert that those allegations are insufficient to demonstrate the court's jurisdiction.

22  Consequently, I will presume Plaintiffs' jurisdictional facts to be true.

23       According to the Complaint, Defendants' contacts with Nevada are minimal.  Sterling is a

24  Georgia limited liability company with its principal place of business in Georgia.  The other

25  moving defendants are residents of Georgia.  Plaintiffs allege that (1) Defendants' purported

26  actions were done with the knowledge and intention that Plaintiffs would suffer harm in Nevada;

27  (2) Defendants "did things and caused things to happen" in Nevada; (3) Defendants directed

28

4

1    "defamatory statements" about Plaintiffs to Nevada residents; and (4) Defendants "conspired with

2    each other, and encouraged and assisted others, to defame Plaintiffs and cause harm to Plaintiffs"

3    in Nevada. (Doc. # 1 at 12-13, ¶¶ 20-23.)

4         There are no grounds for the exercise of general jurisdiction.  Although Plaintiffs note that

5    Sterling has prosecuted an action in Nevada courts and defendant Rhame owns other Nevada

6    corporations, this is insufficient to show that Defendants are "at home" in Nevada. *Daimler*, 134

7    S. Ct. at 757.  Quite the contrary, the allegations in the Complaint establish that Sterling's

8    operations and employees are "at home" in Georgia.  In fact, as alleged in the Complaint, the only

9    contact of any significance Defendants have with Nevada is vis-à-vis the alleged attacks on Dinar

10   Corp.  Consequently, the exercise of general personal jurisdiction is inappropriate.

11        Thus, specific jurisdiction must exist in order to maintain this lawsuit in this Court.  To

12   establish specific jurisdiction, Plaintiffs must show that (1) Defendants performed some act or

13   consummated some transaction with Nevada or otherwise purposefully availed themselves of the

14   privileges of conducting activities in Nevada, (2) Plaintiffs' claims arise out of or result from that

15   Nevada-related activity, and (3) the exercise of jurisdiction would be reasonable. *See Bancroft &*

16   *Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

17        To determine purposeful availment in the context of alleged tortious internet conduct,

18   courts are to inquire whether a defendant "purposefully directed his activities" at the forum state,

19   applying the "effects" test based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S.

20   783 (1984). *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).  This

21   "effects test" requires that "the defendant allegedly must have (1) committed an intentional act,

22   (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

23   suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128

24   (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

25   1199, 1206 (9th Cir. 2006)).

26        As to the first prong, there is no question that Defendants' alleged acts were intentional.

27   Posting information on a website constitutes an intentional act. *See Mavrix Photo*, 647 F.3d at

28

5

1229.  The allegation that Defendants posed as Dinar Corp customers and posted poor online reviews and comments is sufficient to satisfy the first prong of the "effects" test.

Similarly, as to the third prong, Plaintiffs' allegations are sufficient to show that Defendants were aware that the harm of their alleged acts was likely to be suffered in the forum state.  This prong is satisfied "when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell*, 606 F.3d at 1131 (citing *Bancroft*, 223 F.3d at 1087).  This does not require the "brunt" of the harm to be suffered in the forum, but rather that some harm is foreseeable. *Id.*  Here, Plaintiffs allege that Defendants knew Dinar Corp was incorporated in Nevada and, consequently, harm in Nevada was a foreseeable effect of Defendants' actions.  Although the place of incorporation is not necessarily the location of a corporation's harm (*see Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002)), Plaintiffs have made a prima facie showing that Defendants' posting of fake reviews and negative comments had a foreseeable effect in Nevada.

However, as to the second prong, I find that Defendants did not expressly aim their conduct at Nevada.  Although Defendants posted the comments and reviews on a website accessible in Nevada, "something more" is required to constitute an express aim. *See Cybersell Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).  In assessing "something more," the Ninth Circuit has examined "several factors, including the interactivity of the website . . . the geographic scope of defendant's commercial ambitions . . . and whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229 (citations and quotations omitted).

Both the website and Defendants' use of it were passive.  Websites that contain no more interactivity than the allowance of users to post information are considered passive. *See Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1135 (D. Nev. 2002) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  Here, dinarreview.com does not have the capability to facilitate transactions or create contracts.  Rather, the site merely offers a forum for customers to post information relating to various service providers.  Moreover,

1   although Defendants' use of the website was done with the alleged intent to drive potential

2   customers to its site and services, a commercial purpose accompanying a web post is insufficient

3   to constitute "something more." *Id.* at 1135-36.  Indeed, even a posted advertisement is

4   considered passive information. *See Cybersell*, 130 F.3d at 420.

5        Additionally, the geographic scope of Defendants' alleged activity was not targeted at

6   Nevada.  Defendants' negative reviews were equally aimed at potential customers in all 50 states

7   and around the world.  Although Dinar Corp may have a higher concentration of customers in

8   Nevada,[3] Dinar Corp has not specifically alleged any facts demonstrating that Defendants' acts or

9   intentions were targeted at Dinar Corp's Nevada-based customers. *Compare Pebble Beach Co. v.*

10  *Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) (awareness of the possible effects of a non-

11  interactive advertisement was insufficient to constitute express aim) *with Rio Properties, Inc. v.*

12  *Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002) (holding a general accessible website

13  together with a marketing campaign in Nevada to be sufficient to create personal jurisdiction).

14  *See also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (Ohio car

15  dealership's print advertisement appropriating image of Arnold Schwarzenegger was insufficient

16  to create jurisdiction in California, where Schwarzenegger resided, because the scope of the local

17  advertisement was expressly aimed at Ohio.).

18       In contrast, the allegations in the Complaint demonstrate that Defendants individually

19  targeted Plaintiffs.  The intent of the defendant is what courts focus on regarding the

20  individualized targeting factor.  For example, in *Panavision Int'l v. Toeppen*, 141 F.3d 1316,

21  1318-19 (9th Cir. 1998), the Ninth Circuit affirmed the district court's finding of personal

22  jurisdiction where a cybersquatter registered a website using plaintiff's name, then attempted to

23  extort payment from plaintiff to relinquish the site.  Conversely, in *Pebble Beach Co.*, 453 F.3d at

24  1153-54, 1158, no personal jurisdiction existed over the owner of a Pebble Beach bed and

25  breakfast for his registration and use of the website www.pebblebeach-uk.com, even though he

26  _____

27  [3] Plaintiffs assert that "a majority of [Dinar Corp's] customers (10%) are located in Nevada."
    (Doc. # 9, p. 11.)  It is unclear how 10% constitutes a majority, but I will assume that more of

28  Dinar Corp customers live in Nevada than in any other state.

7

1    was aware of the well-known golf course of the same name.  Here, Plaintiffs allege that

2    Defendants posted the reviews and comments with the express intent to harm Dinar Corp.  Thus,

3    its online activity was not legitimate as in *Pebble Beach*, but rather intended to cause harm to

4    Plaintiffs as in *Panavision*.  The Defendants individually targeted Plaintiffs.

5           Weighing all the factors, Defendants' actions do not constitute the "something more"

6    needed to show that those actions were expressly aimed at Nevada.  It is well established that a

7    "foreign act with foreseeable effects in the forum state" is insufficient to constitute the

8    "something more" necessary to show purposeful availment. *Bancroft*, 223 F.3d at 1087.

9    Moreover, the cases finding "something more" focus on actions targeted at the forum taken in

10   addition to the online activity. *See, e.g.*, *id.* at 1088 (letter sent to plaintiff requiring it to sue or

11   lose its domain name); *Panovision*, 141 F.3d at 1318-19 (cybersquatter's letter to plaintiff

12   extorting payment for website); *Rio*, 284 F.3d at 1021 (print and radio advertisements of website

13   within the forum).  Here, although Defendants allegedly contacted Dinar Corp's advertisers and a

14   customer in addition to their online activity, there are no allegations that the advertisers or the

15   customer were Nevada residents or that these actions were targeted at Nevada in any way.

16   Ultimately, the thrust of Plaintiffs' argument is that Defendants' actions were expressly aimed at

17   Nevada because Defendants knew Dinar Corp was incorporated in Nevada and consequently

18   Defendants should have foreseen harm in Nevada.  As such, Plaintiffs' arguments "focus too

19   much on the effects prong and not enough on the 'something more' requirement." *Pebble Beach*,

20   453 F.3d at 1159.  Although Plaintiffs' allegations establish the first and third prongs of the

21   "effects" test, they are insufficient to show the "something more" necessary to establish the

22   second, "expressly aimed," prong.  Plaintiffs have failed to make a prima facie showing of

23   personal jurisdiction.

24          In their Opposition to the motion, Plaintiffs request that, in the event I find there to be no

25   personal jurisdiction, I transfer venue to the United States District Court for the Northern District

26   of Georgia pursuant to 29 U.S.C. § 1404(a).  Defendants express no opposition to transfer.  A

27   court "may transfer venue under either § 1404(a) or § 1406(a) without regard to whether it has

28

8

1    personal jurisdiction over" a defendant. *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d

2    1209, 1211 (D. Haw. 2002) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)).  As venue is

3    improper in the District of Nevada, any transfer must be pursuant to § 1406(a). *See id.* at 1212,

4    1214.  Under § 1406(a) a district court may, "if it be in the interest of justice, transfer [a] case to

5    any district or division in which it could have been brought."  Because Defendants reside in

6    Atlanta, courts in Georgia may exercise personal jurisdiction over them and the case could have

7    been brought in the Northern District of Georgia.  If this case were dismissed, Plaintiffs' claims

8    may be barred by the applicable statute of limitations.  Thus, rather than dismiss the action, the

9    interests of justice are better served by transferring venue.  Consequently, I transfer this case to

10   the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. §

11   1406(a).

12   **III.    CONCLUSION**

13          IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. # 4) is

14   DENIED.  However, the Clerk of the Court is instructed to transfer this case to the United States

15   District Court for the Northern District of Georgia.

16          DATED THIS 15th day of August 2014.

17

18   _____

19   ANDREW P. GORDON
     UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

9